QUARLES, Respondent, vs. NAUERT, Appellant.

*October 8—November 6, 1951.*

For the appellant there was a brief by *Timlin, Dean & Klug,* attorneys, and *William W. Apter* of counsel, all of Milwaukee, and oral argument by *Patrick W. Dean.*

For the respondent there was a brief by *Willis W. Hagen,* attorney, and *Charles H. Rowan* of counsel, both of Milwaukee, and oral argument by *Mr. Hagen.*

FRITZ, C. J. Action commenced by the plaintiff Johnnie T. Quarles (husband of Delilah Quarles) against the defendant Mata Nauert to recover judgment under the Federal Housing and Rent Act of 1947 for alleged overcharges in excess of the maximum amount of rent which could lawfully be demanded or accepted under said act as rent for an apartment owned by her.

Plaintiff alleged in his complaint that on August 19, 1948, he leased of the defendant on a week-to-week tenancy an apartment, which he and his wife occupied from August 20, 1948, to and including January 5, 1949; that defendant demanded and received from plaintiff $13.50 per week each and every week as rent for said apartment during the period ending January 5, 1949; that the total amount so demanded and received by defendant from plaintiff was $256.50, whereas the total maximum rent that defendant could lawfully demand or receive under the Federal Housing and Rent Act was $116.35; and that the total amount of overcharges unlawfully demanded and received by defendant was $140.15.

Defendant denied in her answer that she had at any time, leased the apartment to plaintiff or demanded or received any money from him as rent. On the trial, plaintiff testified: "I moved into the rented premises on August 19, 1948, and remained there as a week-to-week tenant until January 5, 1949. I was charged $13.50 a week rent." By undisputed

evidence it was proven that as the result of correspondence between defendant and plaintiff's wife, Delilah Quarles, she accepted by her letter dated August 4, 1948, defendant's offer to work for her, at a salary of $40 per week and to pay to defendant $13.50 per week as rent for an apartment owned by defendant. And in that letter plaintiff's wife stated also: "The wages aren't as much as I'd hoped they'd be considering the amount of rent, but perhaps we can get along. With my husband going to school that means I have to earn the bread and butter." Nineteen receipts for the payment of the rent were introduced in evidence. Each receipt is signed by the defendant acknowledging the receipt of $13.50 from Delilah Quarles for a week's rent; and she testified: "Every written receipt was made out to me and are in evidence." She also testified: "I was employed by Mata Nauert. . . . The arrangement was made that she pay me $40 a week and I was supposed to pay $13.50 per week rent. I made no other contribution to household expenses as between me and my husband. My husband paid other household expenses such as food and clothing. This was pursuant to agreement between us. . . . My husband handled the dealings with the defendant relative to the maintenance of the place or anything other than pertaining strictly to the rent. . . . I didn't pay anything to the household. I just paid the rent. He took care of the other expenses."

On cross-examination plaintiff testified: "I had no income except from the government as a G. I. student. My wife was working at the time. The receipts for rent are not to me."

On redirect examination plaintiff stated: "I did not give my wife any money to pay the rent. I believe the receipts were part of my wife's salary each week. $13.50 was deducted from her salary each week and given to her in the form of a receipt."

Upon being recalled plaintiff testified: "Under agreement between myself and wife I paid the household expenses other than the rent. That was our agreement when I first started school. My wife was to pay the rent just as in other cases where we lived when I was going to school." ·

The defendant testified: "I was anxious to employ Delilah Quarles. I wrote her a letter to which she replied under date of July 28, 1948. I wrote her that her salary would be $40 for a five-day week and the rent of the apartment would be $13.50 a week. . . . I never received rent from Mr. Quarles except the last rent on January 5th. He brought cash. . . . I never heard anything about the rent until Delilah said Johnnie wanted to see me. He said I was overcharging him for rent."

Thus the evidence clearly established: (1) That the landlord and tenant relationship was created and continued to exist between the defendant and solely Delilah Quarles during all of said nineteen weeks; (2) that eighteen weekly payments of rent were made by Mrs. Quarles by personally using $13.50 of her weekly salary paid to her by defendant, and that for each of the said payments thus made by Mrs. Quarles she was duly given a written receipt acknowledging the payment thereof by her to defendant; (3) that for the nineteenth (last) payment, which was to be made by Mrs. Quarles, her husband brought cash to defendant and the receipt for the payment thereof by Mrs. Quarles was signed by defendant. As all those weekly payments were apparently made by Mrs. Quarles using $13.50 of the $40 which were her own individual earnings, there are applicable thereto the provisions in sec. 246.05, Stats., that, "The individual earnings of every married woman, except those accruing from labor performed for her husband, or in his employ or payable by him, shall be her separate property and shall not be subject to her husband's control or liable for his

debts." In view of that statute, solely Mrs. Quarles was entitled to her earnings as her own separate property. *Estate of Breitzman,* 236 Wis. 96, 294 N. W. 489. Consequently plaintiff was not entitled to any judgment in his favor for any recovery by him by reason of the payments of rent made by his wife with her own individual earnings.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment dismissing the complaint with costs.